# EXHIBIT A

| | |
|---|---|
| 8TH JUDICIAL DISTRICT COURT, LARIMER COUNTY, STATE OF COLORADO<br>201 La Porte Ave<br>Suite 100<br>Ft. Collins, CO 80521<br><br>**PLAINTIFF:** JACOB MCCOY, Individually and for Others Similarly Situated<br><br>**v.**<br><br>**DEFENDANT:** BARNARD CONSTRUCTION COMPANY, INC. | DATE FILED<br>July 3, 2024 3:14 PM<br>FILING ID: BF3E0D4973383<br>CASE NUMBER: 2024CV30571<br><br><br>☐  COURT USE ONLY  ☐ |
| Attorneys for Plaintiff:<br><br>Brian D. Gonzales, Atty. Reg. # 29775<br>**BRIAN D. GONZALES, PLLC**<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Phone: (970) 214-0562<br>BGonzales@ColoradoWageLaw.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:    (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:    (713) 877-8065<br>rburch@brucknerburch.com<br><br>*Pro hac vice applications forthcoming* | Case Number:<br><br><br><br>Ctrm/Div: |
| **ORIGINAL CLASS ACTION COMPLAINT & JURY DEMAND** ||

1

## SUMMARY

1. Jacob McCoy ("McCoy") brings this class action to recover unpaid wages and other damages from Barnard Construction Company, Inc. (Barnard).

2. Barnard employed McCoy as one of its Miners (defined below) in Larimer County, Colorado.

3. Barnard pays McCoy and its other Miners on an hourly basis.

4. McCoy and the other Miners regularly work more than 40 hours a workweek and/or more than 12 hours a workday.

5. But Barnard does not pay McCoy and its other Miners for all their hours worked, including overtime hours.

6. Instead, Barnard requires McCoy and its other Miners to gather tools and equipment necessary to perform their job duties, suit out in protective clothing and safety gear necessary to safely perform their job duties, be ready to go underground at least 30 minutes prior to the start of their scheduled shifts, and then await instruction from their supervisor on the day's tasks, all "off the clock" and without compensation.

7. This pre-shift "off the clock" work takes approximately 30 minutes to an hour each workday.

8. And, after the end of their scheduled shifts, Barnard requires McCoy and its other Miners to store tools and equipment necessary to perform their job duties, remove their protective clothing and safety gear necessary to safely perform their job duties, wash up, and wait for their supervisor to release them to go home, all "off the clock" and without compensation. (¶¶ 6, 8 together constitute Barnard's "pre/post shift off the clock policy").

9. This post-shift "off the clock" work takes approximately 30 minutes to an hour each workday.

10. Additionally, Barnard does not authorize, permit, make available, or ensure that McCoy and the other Miners receive *bona fide* meal breaks each workday that exceeds 5 hours, but deducts 30 minutes each workday from McCoy and the other Miners for so called "meal breaks" (Barnard's "meal deduction policy").

11. And Barnard does not authorize or permit McCoy and the other Miners receive *bona fide* rest breaks.

12. Barnard does not provide McCoy and the other Miners compensation for the meal and rest breaks it fails to provide and/or make available.

13. Thus, Barnard violates the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* (CWCA), the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.* (CMWA), and their implementing regulations, *see, e.g.,* 7 Colo. Code Regs. § 1103-1 (COMPS Orders) in at least three ways:

2

    a. failing to pay McCoy and the other Miners for all hours worked, including all overtime hours;

    b. failing to ensure they received all required meal breaks and failing to compensate them for missed meal breaks; and

    c. failing to ensure they received all required rest breaks and failing to compensate them for missed rest breaks.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction pursuant to COLO. CONST. ART. VI § 9(1) because this case arises under Colorado law, and Barnard's violative conduct occurred in Colorado.

15. This Court has specific personal jurisdiction over Barnard based on Barnard's substantial operations in Colorado and its substantial contacts with, and conduct directed toward Colorado that form the basis of this class action. C.R.S. § 13-1-124.

16. Specifically, Barnard employs McCoy and the other Miners in Colorado and fails to pay them earned wages, minimum wages, overtime wages, and provide required rest and meal periods for their work performed in Colorado.

17. Venue is proper pursuant to C.R.C.P. 98(c) because a substantial part of the events or omissions giving rise to this action occurred in Larimer County.

18. Specifically, Barnard employed McCoy and other Miners in Larimer County.

19. Finally, this matter is properly in this Court because: (1) the aggregate amount in controversy is under $5 million; (2) the size of McCoy's proposed class is fewer than 100 individual members; (3) McCoy's and the other Miners' claims arise under Colorado law, rather than any federal statute; and (4) there is no embedded federal question or issue in McCoy's and the other Miners' claims arising solely under Colorado law.

## PARTIES

20. Barnard employed McCoy as an underground miner in Larimer County, Colorado from approximately December 2022 until October 2023.

21. At all relevant times, McCoy and the other Miners were Barnard's covered "employees" within the meaning of the CWCA, CMWA, and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

22. Throughout McCoy's employment, Barnard classified him as non-exempt from overtime and paid him on an hourly basis.

23. Throughout his employment, under its illegal pre/post shift off the clock policy, Barnard required McCoy to gather tools and equipment necessary to perform their job duties, suit out in protective clothing and safety gear necessary to safely perform his job duties, be ready to go underground at least 30 minutes prior to the start of their scheduled shifts, and await instruction from

3

his supervisor on the day's tasks, all "off the clock" and without compensation prior to his scheduled shift.

24. And throughout his employment, under its illegal pre/post shift off the clock policy, Barnard required McCoy to store tools and equipment necessary to perform his job duties, remove his protective clothing and safety gear necessary to safely perform their job duties, wash up, and wait for his supervisor to release him to go home, all "off the clock" and without compensation after his scheduled shift.

25. Barnard did not consider this time in determining the correct amount of overtime hours worked.

26. Further, throughout his employment, Barnard subjected McCoy to its uniform, illegal meal deduction policy, deducting 30 minutes each workday for a "meal break," but does not authorize, permit, make available, or ensure McCoy has a *bona fide* meal break during shifts exceeding 5 hours.

27. Throughout his employment, McCoy did not receive *bona fide* meal breaks (or compensation for missed meal breaks).

28. And Barnard did not authorize and permit McCoy to take *bona fide* 10-minute rest breaks throughout his employment for every 4 hours or major fraction thereof that he worked.

29. Nor did McCoy receive *bona fide* 10-minute rest breaks throughout his employment (or compensation for his missed rest breaks).

30. Barnard likewise subjects its other Miners to these illegal policies.

31. Thus, Barnard uniformly deprives McCoy and the other Miners of overtime pay at the required premium rate for all hours worked in excess of 40 in a workweek and 12 in a workday, including those worked "off the clock," in violation of the CWCA, CMWA, and COMPS Orders.

32. Likewise, Barnard uniformly deprives them of earned wages for all hours worked, including those worked "off the clock," in violation of the CWCA, CMWA, and COMPS Orders.

33. And, Barnard uniformly deprives McCoy and the other Miners of *bona fide* meal and rest breaks, deducts 30 minutes from them each workday for "meal breaks," and does not provide compensation for missed meal and rest breaks in violation of the CWCA, CMWA, and COMPS Orders.

34. The Putative Class of similarly situated employees is defined as:

> **All miners and similar job titles in Colorado who worked at any time during the past 6 years through final resolution of this action ("Miners").**

35. The Miners can be readily ascertained from Barnard's business and personnel records.

36. Barnard is a Montana corporation headquartered in Bozeman, Montana.

4

37. Barnard is registered to do business in Colorado.

38. Barnard employs employees acting in its interests in Larimer County, Colorado, including McCoy and other Miners.

39. At all relevant times, Barnard transacted and conducted substantial business in Colorado and specifically in Larimer County, Colorado, as well as other parts of Colorado.

40. At all relevant times, Barnard was subject to the CWCA, CMWA, and COMPS Orders, because Barnard was (and is) an "employer" within the meaning of the CWCA, CMWA, and COMPS Orders. *See* C.R.S. § 8-4-101(6); C.C.R. 1103-1(1.6).

41. Barnard may be served through its registered agent: **Corporation Service Company, 1900 W Littleton Boulevard, Littleton, Colorado 80120**.

## FACTS

42. "In the underground market, clients count on [Barnard] to find innovative solutions through collaboration and partnering" and Barnard "offers expertise in the fields of drill and blast and TBM work, including hard rock, EPB, and slurry machines."[1]

43. To meet these business objectives, Barnard hires employees like McCoy and the other Miners to perform underground mining work, including in Larimer County, Colorado.

44. Barnard uniformly classifies McCoy and its other Miners as nonexempt from overtime and pays them on an hourly basis.

45. McCoy and the other Miners regularly work more than 40 hours a workweek and 12 hours a workday.

46. While exact job duties and precise locations may differ, McCoy and the other Miners are subject to Barnard's same or similar illegal policies – its pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit rest breaks and/or provide compensation – for similar work.

47. For example, Barnard employed McCoy as an underground miner in Larimer County, Colorado from approximately December 2022 until October 2023.

48. McCoy was Barnard's hourly, nonexempt employee.

49. Specifically, Barnard paid McCoy approximately $40 an hour.

50. As an underground miner, McCoy's job duties included gathering and storing tools and equipment necessary to perform the day's tasks, donning and doffing protective clothing and safety gear, excavating underground tunnel, drilling and loading explosives into tunnel, clearing out

---

[1] https://www.barnard-inc.com/services/underground (last visited June 6, 2024)

5

debris after detonation, and spraying concrete to reinforce tunnel walls, while advancing tunnel excavation.

51. Throughout his employment, Barnard required McCoy's hours worked to be reported to Barnard through a paper timesheet possessed and filled out by his supervisor, not McCoy.

52. Throughout his employment, McCoy regularly worked more than 40 hours a workweek and 12 hours a workday.

53. Barnard's records show that McCoy regularly worked more than 40 hours a workweek and more than 12 hours in a workday "on the clock."

54. Indeed, McCoy typically worked approximately 10 to 14 hours a day for 5 to 6 days a week (50-84 hours a workweek).

55. But throughout his employment, Barnard did not pay McCoy for all his hours worked, including overtime hours.

56. Instead, throughout his employment, Barnard subjected McCoy to its uniform, illegal pre/post shift off the clock policy.

57. Specifically, Barnard required McCoy to gather tools and equipment necessary to perform his mining duties (including drills, battery operated hammers, head lamp, pliers, welding equipment) suit out in protective clothing and safety gear (including reflective pants, vest, and shirt, safety glasses, gloves, radio, respirator, ear plugs, hardhat, metatarsal boots), be ready to go underground at least 30 minutes prior to the start of his scheduled shift, and await instruction from his supervisor on the day's tasks, while his supervisor conducted a "changeover" meeting with the previous shift's supervisor, all "off the clock" and without compensation.

58. This pre-shift "off the clock" work took McCoy approximately 30 minutes to an hour each workday.

59. And after the end of his scheduled shift, Barnard required McCoy to store his tools and equipment, remove his protective clothing and safety gear, wash up, and wait for his supervisor to release him to go home, while his supervisor conducted a "changeover" meeting with the incoming shift's supervisor, all "off the clock" and without compensation.

60. This post-shift "off the clock" work took McCoy approximately 30 minutes to an hour each workday.

61. Barnard also subjected McCoy to its illegal meal deduction policy.

62. Specifically, Barnard deducted 30 minutes of time worked each workday from McCoy but did not authorize or permit *bona fide* 30-minute meal breaks, as required by Colorado wage laws. *See* 7 C.C.R. 1103-1 (5.1).

63. Barnard did not actually receive *bona fide* uninterrupted meal breaks.

6

64. Instead, to meet Barnard's strict productivity requirements, McCoy was forced to perform his regular mining duties without a *bona fide* meal break.

65. Because of these constant work-related tasks, McCoy was not free to engage in personal activities during "meal breaks."

66. Barnard failed to compensate McCoy for his missed meal breaks.

67. Similarly, because of Barnard's strict productivity requirements, Barnard did not authorize or permit McCoy to take *bona fide* 10-minute rest breaks for every 4 hours or major fraction thereof, he worked. *See* 7 C.C.R. 1103-1 (5.2).

68. And Barnard failed to compensate McCoy for his missed rest breaks.

69. This unpaid "off the clock" work is compensable under Colorado law because Barnard knew, or should have known, that: (1) McCoy was performing unpaid work during his "meal breaks" and "rest breaks"; (2) he was interrupted or subject to interruptions with work duties during any attempted "meal break" and "rest break"; (3) he was not completely relieved of all duties during his "meal breaks" and "rest breaks"; (4) he entirely skipped "meal breaks" and "rest breaks" due to work demands; (5) his "meal breaks" were less than 30 consecutive minutes and his "rest breaks" were less than 10 minutes; and/or (6) he was not free to engage in personal activities during his "meal breaks" and "rest breaks" because of constant work interruptions.

70. Thus, McCoy routinely spent his "meal breaks" and "rest breaks" on-duty and performing work "off the clock."

71. Like McCoy, the other Miners typically work approximately 10 to 14 hours a day for 5 to 6 days a week (50-84 hours a workweek).

72. Barnard requires McCoy and its other Miners to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

73. Like McCoy, Barnard subjects its other Miners to its illegal pre/post shift off the clock policy.

74. And, like McCoy, the other Miners are forced to perform compensable work "off the clock" before their scheduled shift.

75. Specifically, prior to being "on the clock" for their shifts, Barnard requires the other Miners to gather tools and equipment necessary to perform their mining duties (including drills, battery operated hammers, head lamp, pliers, welding equipment) suit out in protective clothing and safety gear (including reflective pants, vest, and shirt, safety glasses, gloves, radio, respirator, ear plugs, hardhat, metatarsal boots), be ready to go underground at least 30 minutes prior to the start of their scheduled shifts, and await instruction from their supervisor on the day's tasks, while their supervisor conducts a "changeover" meeting with the previous shift's supervisor, all "off the clock" and without compensation.

76. This pre-shift "off the clock" work takes the Miners approximately 30 minutes to an hour each workday.

7

77. And after the end of their scheduled shift, Barnard requires the Miners to store their tools and equipment, remove their protective clothing and safety gear, wash up, and wait for their supervisor to release them to go home, while their supervisor conducted a "changeover" meeting with the incoming shift's supervisor, all "off the clock" and without compensation.

78. This post-shift "off the clock" work takes the Miners approximately 30 minutes to an hour each workday.

79. As with McCoy, the other Miners perform this pre/post shift work off the clock on Barnard's premises and for Barnard's benefit.

80. As with McCoy, the other Miners perform this pre/post shift work off the clock with Barnard's permission.

81. Indeed, like McCoy, the other Miners could not perform their mining duties in accordance with Barnard's policies, procedures, standards, and expectations unless they perform this pre/post shift "off the clock" work.

82. In other words, McCoy's and the other Miners' mandatory pre/post shift "off the clock" work is a fundamental requirement of their job duties.

83. Barnard could not eliminate this pre/post shift "off the clock" work without impairing or eliminating McCoy's and the other Miners' ability to perform their mining duties for Barnard.

84. And Barnard knows McCoy and its other Miners perform this compensable pre/post shift "off the clock" work because Barnard requires them to do so.

85. But Barnard failed to exercise its duty as McCoy's and the other Miners' employer to ensure these employees were not and are not performing compensable work that Barnard does not want performed "off the clock" before and after their scheduled shifts.

86. Thus, Barnard requested, suffered, permitted, or allowed McCoy and its other Miners to work "off the clock" before and after their scheduled shifts.

87. Barnard's management received complaints from its Miners that they were required to perform compensable work "off the clock," without compensation, as Barnard required.

88. Additionally, just as with McCoy, Barnard subjected its other Miners to its illegal meal deduction policy.

89. Barnard deducted 30 minutes each workday from the Miners' hours worked but did not authorize, permit, make available, or ensure the Miners could take *bona fide* 30-minute meal breaks, as required, for shifts exceeding 5 hours.

90. Instead, to complete their assigned heavy workloads in accordance with Barnard's policies, procedures, standards, and expectations, the Miners were forced to perform their regular mining duties and responsibilities during their "meal breaks."

8

91. The "off the clock" work McCoy and the other Miners performed during their "meal breaks" was similar if not the same.

92. Because of the constant work-related tasks, McCoy and the other Miners are not free to engage in personal activities during required "meal breaks."

93. Barnard failed to compensate the Miners for their missed meal breaks.

94. Similarly, Barnard did not authorize or permit the other Miners to take *bona fide* 10-minute rest periods for every 4 hours worked or major fraction thereof.

95. Barnard failed to compensate the other Miners for their missed rest breaks.

96. This unpaid "off the clock" work is compensable under Colorado law because Barnard knew, or should have known, that: (1) the Miners were performing unpaid work during their "off the clock" meal breaks and during their "rest breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted "meal break" and "rest break"; (3) they were not completely relieved of all duties during their "meal breaks" and "rest breaks"; (4) they entirely skipped their "meal breaks" and "rest breaks" due to work demands; (5) their "meal breaks" were less than 30 consecutive minutes; and/or (6) they were not free to engage in personal activities during their "meal breaks" and "rest breaks" because of constant work interruptions.

97. Thus, the other Miners routinely spend their "meal breaks" and "rest breaks" on-duty and performing work "off the clock."

98. And Barnard knew McCoy and the other Miners regularly worked "off the clock" during their unpaid "meal breaks" and "rest breaks."

99. Despite accepting the benefits, Barnard does not pay McCoy and its other Miners for the compensable work they perform "off the clock" during their unpaid "meal breaks" and during their "rest breaks."

## CLASS ACTION ALLEGATIONS

100. McCoy incorporates all other paragraphs by reference.

101. McCoy brings his claims as a class action on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

102. Like McCoy, the other Miners were victimized by Barnard's illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks.

103. Other Miners worked with McCoy and indicated they were paid in the same manner, performed similar work, and were subject to Barnard's illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks.

104. Based on his experience with Barnard, McCoy is aware Barnard's pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks were imposed on the other Miners.

9

105. The putative class of Miners is so numerous that the joinder of all potential class members is impracticable.

106. The Miners are similarly situated in the most relevant respects.

107. Even if their specific job titles or precise locations might vary, these differences do not matter for the purposes of determining their entitlement to meal and rest breaks, earned wages for all hours worked, and overtime wages for all hours worked over 40 in a workweek or 12 in a workday.

108. Therefore, the specific job titles or precise job locations of the Miners do not prevent class treatment.

109. Rather, the Miners are held together by Barnard's uniform, illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks, which systematically deprived McCoy and the other Miners of *bona fide* meal and rest breaks, earned wages for all hours worked, and overtime wages at the proper premium rate for all hours worked after 40 in a workweek and 12 in a workday.

110. Barnard's failure to pay earned wages and overtime wages as required by Colorado wage laws results from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Miners.

111. Barnard's records reflect the number of hours the Miners' supervisors recorded they worked each workweek.

112. Barnard's records also show the number of hours the Miners worked "on the clock" each workweek.

113. The back wages owed to McCoy and the other Miners can therefore be calculated using the same formula applied to the same records.

114. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Barnard's records, and there is no detraction from the common nucleus of liability facts.

115. Therefore, the issue of damages does not preclude class treatment.

116. McCoy's experiences are typical of the experiences of the other Miners.

117. McCoy has no interest contrary to, or in conflict with, the other Miners.

118. Like each Miner, McCoy has an interest in obtaining the unpaid wages owed to them under Colorado law.

119. McCoy and his counsel will fairly and adequately protect the interests of the other Miners.

120. McCoy retained counsel with significant experience in complex class action litigation.

10

121. A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

122. Absent this class action, many Miners likely will not obtain redress for their injuries, and Barnard will reap the unjust benefits of violating Colorado wage laws.

123. Further, even if some of the Miners could afford individual litigation against Barnard, it would be unduly burdensome to the judicial system.

124. Indeed, the multiplicity of actions would create a hardship for the Miners, the Court, and Barnard.

125. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Miners' claims.

126. The questions of law and fact that are common to each Miner predominate over any questions affecting solely the individual members.

127. Among the common questions of law and fact are:

   a. Whether Barnard required, requested, suffered, or permitted the Miners to work "off the clock," without compensation before and/or after their shifts;

   b. Whether Barnard knew, or had reason to know, the Miners were requested, suffered, or permitted, to work "off the clock," without compensation before and/or after their shifts;

   c. Whether Barnard engaged in a policy and practice of deducting 30 minutes from the Miners for "meal breaks," regardless of whether they actually took a *bona fide*, uninterrupted meal break;

   d. Whether Barnard's meal deduction policy deprived the Miners of earned wages for all hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

   e. Whether Barnard's meal deduction policy deprived the Miners of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

   f. Whether Barnard failed to authorize and/or permit the Miners to take *bona fide* rest breaks.

   g. Whether Barnard's failure to authorize and/or permit the Miners to take *bona fide* rest breaks deprived the Miners of earned wages for all hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

11

  h. Whether Barnard's failure to authorize and/or permit the Miners to take *bona fide* rest breaks deprived the Miners of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

  i. Whether Barnard's pre/post shift off the clock policy deprived the Miners of earned wages for all hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

  j. Whether Barnard's pre/post shift off the clock policy deprived the Miners of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

  k. Whether Barnard's decision to not pay the Miners all their earned wages for all hours worked, including those worked "off the clock," was made in good faith;

  l. Whether Barnard's decision not to pay the Miners overtime wages for all overtime hours worked, including those worked "off the clock," was made in good faith;

  m. Whether Barnard's decision not to pay the Miners overtime wages at the required premium rate was made in good faith; and

  n. Whether Barnard's violations were willful.

128. McCoy knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

129. As part of its regular business practices, Barnard intentionally, willfully, and repeatedly violated Colorado wage laws with respect to McCoy and the other Miners.

130. Barnard's illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks deprived McCoy and the other Miners of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek and 12 in a workday, which they are owed under Colorado law.

131. Accordingly, all of C.R.C.P. 23's requirements are satisfied, and McCoy's proposed class of Miners merits certification.

### BARNARD'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF COLORADO WAGE LAWS

132. McCoy incorporates all other paragraphs by reference.

133. Barnard knew it was subject to the CWCA's, CMWA's, and COMPS Order's respective provisions. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

12

134. Barnard knew McCoy and the other Miners were its non-exempt employees entitled to overtime pay. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5); 7 C.C.R. 1103-1(4.1.1).

135. Barnard knew the CWCA, CMWA, and COMPS Orders, required it to pay non-exempt employees, including McCoy and the other Miners, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

136. Barnard knew the CWCA, CMWA, and COMPS Orders further required it to pay employees, including McCoy and the other Miners, all wages earned for all hours of work performed. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

137. Barnard knew McCoy and the other Miners worked over 40 hours in at least one workweek and/or over 12 hours in one workday during the 3 years before this Complaint was filed because Barnard required their "on the clock" hours worked to be recorded using its timekeeping system.

138. Barnard knew the CWCA, CMWA, and COMPS Orders required it to pay employees, including McCoy and the other Miners, for all hours these employees performed compensable work. *See* 7 C.C.R. 1103-1 (3.1).

139. Barnard knew that, as McCoy's and the other Miners' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Barnard did not want performed. *See* 7 C.C.R. 1103-1 (1.9).

140. Barnard knew it did not authorize and permit McCoy and the other Miners to take *bona fide* rest breaks for every four hours worked or major fraction thereof. *See* 7 CCR 1103-1 (5.2).

141. Barnard knew it did not provide McCoy and the other Miners additional compensation for their on-duty "rest breaks." *See* 7 C.C.R. 1103-1 (5.2.4).

142. Barnard knew it did not authorize and permit McCoy and the other Miners to take *bona fide* meal breaks for shifts exceeding five hours. *See* 7 CCR 1103-1 (5.1).

143. Barnard knew McCoy and the other Miners performed compensable work "off the clock" before their scheduled shifts.

144. Barnard knew McCoy and the other Miners performed compensable work "off the clock" after their scheduled shifts.

145. Barnard knew it controlled McCoy's and the other Miners' pre/post shift "off the clock" work. *See* 7 C.C.R. 1103-1 (1.9).

146. Barnard knew McCoy's and the other Miners' pre/post shift "off the clock" work was necessary to the principal work these employees performed as Barnard miners. *See Id.*

147. Barnard knew McCoy's and the other Miners' pre/post shift "off the clock" work was integral and indispensable to these employees' work as Barnard miners. *See Id.*

13

148. Thus, Barnard knew it requested, suffered, or permitted McCoy and the other Miners to work "off the clock" during their "meal breaks," "rest breaks," and/or before and/or after their scheduled shifts. *See Id.*; 7 CCR 1103-1 (5).

149. Nonetheless, Barnard did not pay McCoy and the other Miners for the compensable hours and overtime hours they worked "off the clock" during their "meal breaks," "rest breaks," and/or before and/or after their shifts.

150. McCoy and the other Miners complained to Barnard about being required to work "off the clock."

151. As a result of the foregoing conduct, as alleged, Barnard failed to pay wages due thereby violating, and continuing to violate, the CWCA, COMPS Orders, and CMWA. These violations were committed knowingly, willfully, and with reckless disregard of applicable law. *See* C.R.S. § 8-4-109(3)(b)–(c); 7 CCR 1103-1 (8.2).

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA AND COMPS ORDERS
### (CLASS ACTION)

152. McCoy incorporates all other paragraphs by reference.

153. McCoy brings his CWCA overtime claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

154. Barnard's conduct violated the CWCA, as implemented by the COMPS Orders. *See* C.R.S. §§ 8-4-101, *et seq.*; 7 C.C.R. 1103-1.

155. At all relevant times, Barnard was subject to the CWCA and the COMPS Orders because Barnard was (and is) an "employer" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

156. At all relevant times, Barnard employed McCoy and the other Miners as its covered "employees" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

157. The COMPS Orders require employers, like Barnard, to pay non-exempt employees, including McCoy and the other Miners, overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration – for all hours worked over 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

158. McCoy and the other Miners are entitled to overtime pay under the COMPS Orders. *See* 7 C.C.R. 1103-1(4.1.1).

159. Barnard violated the CWCA and COMPS Orders by failing to pay McCoy and the other Miners overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration received – for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" before and after their shifts and for denied "meal breaks" and "rest

14

breaks," for which Barnard failed to compensate McCoy and the other Miners. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

160. Barnard's unlawful conduct harmed McCoy and the other Miners by depriving them of the proper premium overtime wages they are owed.

161. Accordingly, McCoy and the other Miners are entitled to recover their unpaid overtime wages and an automatic penalty of the greater of two times the amount of the unpaid overtime wages or $1,000. *See* C.R.S. § 8-4-109(3)(b)(I); 7 C.C.R. 1103-1(8.1).

162. Because Barnard's failure to pay these overtime wages was willful, Barnard is also liable to McCoy and the other Miners for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(3)(b)(II).

163. Finally, McCoy and the other Miners are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.C.R. 1103-1(8.1).

## COUNT II

### FAILURE TO PAY MINIMUM WAGES UNDER THE CMWA AND COMPS ORDERS
### (CLASS ACTION)

164. McCoy incorporates all other paragraphs by reference.

165. McCoy brings his CMWA minimum wages claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

166. Barnard's conduct violated the CMWA, as implemented by the COMPS Orders. *See* 7 C.C.R. 1103-1(1.5).

167. At all relevant times, Barnard was subject to the CMWA because Barnard was (and is) an "employer" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.6).

168. At all relevant times, Barnard employed McCoy and the other Miners as its covered "employees" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.5 and 1.6).

169. The CMWA and COMPS Orders require employers, like Barnard, to pay employees, including McCoy and the other Miners, no less than the minimum hourly wage for all hours worked, including overtime pay for hours worked in excess of 40 per workweek and 12 per day. *See* C.R.S. § 8-6-116; 7 C.C.R. 1103-1 (1.9 and 3).

170. Barnard violated the CMWA and COMPS Order by failing to pay McCoy and the other Miners minimum wages for all hours worked, including hours worked "off the clock" for denied "meal breaks" and "rest breaks," for which Barnard failed to compensate McCoy and the other Miners. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

171. Barnard's unlawful conduct harmed McCoy and the other Miners by depriving them of the minimum wages they are owed.

15

172. Accordingly, McCoy and the other Miners are entitled to recover their unpaid minimum wages and interest. *See* C.R.S. § 8-6-118.

173. Finally, McCoy and the other Miners are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-6-118.

## COUNT III

### FAILURE TO PAY EARNED WAGES UNDER THE CWCA AND COMPS ORDERS
### (CLASS ACTION)

174. McCoy incorporates all other paragraphs by reference.

175. McCoy brings his CWCA earned wages claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

176. Barnard's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq.*

177. At all relevant times, Barnard was subject to the CWCA because Barnard was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

178. At all relevant times, Barnard employed McCoy and the other Miners as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

179. The CWCA requires employers, like Barnard, to pay employees, including McCoy and the other Miners, all wages earned, due, and owing on their regular payday and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

180. Barnard violated the CWCA by failing to pay McCoy and the other Miners all their wages earned for all the hours of work they performed for Barnard, including overtime wages calculated at the required rate and hours worked "off the clock" before their scheduled shifts and after their scheduled shifts, for time deducted for "meal breaks," and for "meal breaks" and "rest breaks" that Barnard failed to permit and/or authorize, for which Barnard failed to compensate McCoy and the other Miners. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1); 7 C.C.R. 1103-1(4.1.1, and 5).

181. Barnard's unlawful conduct harmed McCoy and the other Miners by depriving them of the earned wages they are owed.

182. Accordingly, McCoy and the other Miners are entitled to recover their unpaid earned wages and an automatic penalty in the amount of two times the amount of the unpaid wages or compensation or $1,000, whichever is greater. *See* C.R.S. § 8-4-109(3).

183. Because Barnard's failure to pay these earned wages was willful, Barnard is also liable to McCoy and the other Miners for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

184. Finally, McCoy and the other Miners are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

## COUNT IV

### CIVIL THEFT OF WAGES
### (CLASS ACTION)

185. McCoy incorporates all other paragraphs by reference.

186. McCoy brings his civil theft claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

187. At all relevant times, Barnard was subject to the CWCA because Barnard was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

188. At all relevant times, Barnard employed McCoy and the other Miners as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

189. Barnard knew it failed to pay McCoy and the other Miners minimum wage and overtime because Barnard knew they performed work for Barnard "off the clock" before and after their scheduled shifts and during "meal breaks" and "rest breaks" that Barnard failed to authorize and/or permit and for which Barnard failed to compensate McCoy and the other Miners.

190. Barnard's knowing failure to pay minimum wage under the CMWA, constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 18-6-116.

191. As a result, Barnard's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

192. Accordingly, McCoy and the other Miners are entitled to the greater of $200 or treble damages. *See* C.R.S. § 18-4-405.

193. McCoy and the other Miners are also entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court. *See* C.R.S. § 18-4-405.

### JURY DEMAND

194. McCoy demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, McCoy, individually and on behalf of the other Miners, seeks the following relief:

    a.    An Order certifying the Miners as a Class and certifying this litigation as a class action pursuant to C.R.C.P. 23;

    b.    An Order appointing McCoy and his counsel to represent the interests of the Miners;

    c.    An Order authorizing prompt notice of this litigation to all Miners;

  d.  An Order finding Barnard liable to McCoy and the other Miners for the unpaid overtime wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation of $1,000, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

  e.  An Order finding Barnard liable to McCoy and the other Miners for their unpaid earned wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000, plus treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater;

  f.  An Order finding Barnard liable to McCoy and the other Miners for their unpaid minimum wages owed under the CMWA, plus interest;

  g.  Judgment awarding McCoy and the other Miners all unpaid earned wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the CWCA and CMWA;

  h.  An Order awarding attorneys' fees, costs, and expenses;

  i.  Pre- and post-judgment interest at the highest applicable rates; and

  j.  Such other and further relief as may be necessary and appropriate.

Dated: July 3, 2024

Respectfully submitted,

**BRIAN D. GONZALES PLLC**

By: */s/ Brian D. Gonzales*
    Brian D. Gonzales
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Phone: (970) 214-0562
bgonzales@coloradowagelaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR MCCOY
& THE MINERS**

19